UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JL BEVERAGE COMPANY, LLC,<br><br>                                Plaintiff,<br>     v.<br>BEAM, INC. et al.,<br><br>                             Defendants. | Case No. 2:11-cv-00417-MMD-CWH<br><br>ORDER<br><br>(Defs.' Renewed Motion for Summary Judgment – ECF No. 170) |

## I. SUMMARY

Before the Court is Defendants Beam Inc. and Jim Beam Brands Co.'s (collectively "Jim Beam") Renewed Motion for Summary Judgement as to the Unavailability of Damages. (ECF No. 170.) Jim Beam's Motion seeks to limit the kinds of damages Plaintiff JL Beverage Company, LLC ("JL") may seek at trial. The Court has reviewed the Motion as well as JL's response (ECF No. 177) and Jim Beam's reply (ECF No. 178). For the reasons stated below, the Motion is granted in part and denied in part.

## II. BACKGROUND

The facts giving rise to this action are set out in detail in the Court's previous orders and in the Ninth Circuit's opinion reversing an earlier order granting summary judgment on different grounds. (ECF Nos. 98, 107, and 157.)

The facts relevant to this order, which are undisputed unless otherwise indicated, are as follows:

### A. Johnny Love Vodka

JL was formed in July 2005, and purchased the Johnny Love brand from a third party. The purchase included a then-pending application to register the Johnny Love

Vodka & design trademark. (ECF No. 169-2 at 9-10, 30-32.) JL began using the lips trademarks below in 2004 and registered them in 2005 and 2011:

 

(ECF No. 36-1 ¶¶ 2-4.) Both images appear on the Johnny Love line of vodkas:



(*Id.*)

JL markets its line of Johnny Love Vodka nationwide and works with distributors in at least 20 states. (ECF No. 62-1 ¶ 3; ECF No. 62-2.) In 2009 it altered its business strategy and began working with "entrepreneurial-based business representation that had pre-existing local and territorial specific regional ties of close bar and retail relationships." (ECF No. 176-1 ¶ 2.) One such organization was a North Carolina company called Enkamp LLC. (*Id.* ¶5.)

In December 2011 Shaun Robertson, a manager at Enkamp, emailed JL a list of times he had interacted with people who had confused Johnny Love Vodka with PUCKER Vodka in one way or another. (ECF No. 36-2 at 4-5.) Robertson also forwarded JL an

email in which an administrator with the North Carolina Alcoholic Beverage Control Commission noted that "Jim Beam's new line of vodka [l]ooks a lot like Johnny Love." (*Id.* at 7.)

JL delivered a cease and desist letter to Jim Beam on March 18, 2011. (ECF No. 36-1 at 17-19.) The letter identified JL's trademark and its basis for believing Jim Beam's design infringed upon it. (*Id.*) JL also filed letters of protest with the USPTO in regards to Jim Beam's trademark applications for its bottle design. (ECF No. 37-1 at 4.)

## B. PUCKER Vodka

Jim Beam sold a line of liquors called PUCKER under a license with a third party since March 1996. (ECF No. 57 ¶ 4.) The PUCKER bottles included a set of lips which corresponded to the flavor of the liquor. The lips and two corresponding designs were registered trademarks. (*Id.* ¶ ¶6.) Jim Beam purchased the PUCKER brand entirely from the third party in 2010 and began developing a line of PUCKER vodka. (*Id.* ¶ 7, 8.) At least one Jim Beam employee was aware of Johnny Love's vodkas and had contacted JL to inquire about their sales. (ECF No. 44 ¶¶ 4-5.)

Jim Beam hired an outside design firm to design packaging for PUCKER vodka. (*Id.* ¶ 9.) The firm eventually produced two options for bottles (with fourteen different options for bottle caps) to Maria Martin, the Director of Intellectual Property at Jim Beam. (*Id.* ¶¶ 9-11.) Martin sent the designs to Jim Beam's outside trademark counsel. (*Id.* ¶¶10-11.) Trademark counsel reviewed a trademark clearance search report that included, among other things, JL's Johnny Love Vodka & Design trademark. (ECF No. 47 ¶ 13.) Trademark counsel then produced an opinion letter, which Martin reviewed. The opinion letter identified the Johnny Love Vodka & Design trademark, among others, but Martin testified that she did not specifically look at or see that mark. (ECF No. 170-2 at 15-16.) Jim Beam then sent two final designs to yet another outside firm to conduct market research. (ECF No. 170-3 at 19-20.) In November 2010, Jim Beam settled on a final design below:

Jim Beam began producing PUCKER vodka in March 2011 and filed for trademark

protection on, among other things, the lips design that was developed by the third party design firm. (*Id.* at 25; ECF No. 57 ¶ 13; ECF No. 169-15.) Jim Beam launched PUCKER vodka nationwide in April 2011. (ECF No. 170-3 at 9.)

C.     **The Parties' Conduct During Discovery[1]**

JL has indicated that it intends to seek recovery of 1) actual damages, 2) any profits



Jim Beam has earned because of infringement, and 3) a royalty similar to the royalty Jim Beam sought from another party in an unrelated case. (ECF No. 169-10 at 4-5.) In its initial disclosures, JL stated that a computation of damages "could not be determined" at that time. It also identified JL's manager, founder and sole employee, Thomas Diab, as the person most knowledgeable about its claims. (ECF No. 169-11 at 3, 7-8.) Jim Beam later sent an interrogatory requesting that JL "identify and describe with specificity the exact amount and type" of any monetary loss claim. JL did not provide a calculation of damages in response, instead it stated that it was "in the process of making a calculation" and would "supplement [its] response" when it could. (ECF No 169-10 at 4-5.)

---

[1] In its response, JL states that it disputes "[Jim Beam's] fact numbers 5, 9-11, 15, 19- 20, 32, 37-39, 41, and 44-49, for the reasons set forth below." (ECF No. 176 at 6.) Facts 44-49 concern JL's failure to disclose computations of damages. (See ECF No. 170 at 13-15.) JL, however, never actually gets around to setting out any "reasons set forth below." Besides this sentence, JL does not address Jim Beam's allegations that it has not identified its mean of calculating damages. JL has not argued that the quotes Jim Beam provides are inaccurate or misleading, nor has it pointed to any contradictory evidence in the record. It has, instead, relied simply on the assertion that it disputes these facts. This clearly falls short of the standards for a non-moving party described in *Iqbal* and *Twombly*.

Diab sat for two 30(b)(6) depositions. In the first, he testified that JL had "not done a calculation" of damages. (ECF No. 169-2 at 19-22.) In his second deposition a few months later, he testified that JL had no accounting information or any other source showing a measure of damages from Jim Beam's infringement. (ECF No. 170-1 at 5-8.)

Similarly, JL did not mention or calculate any royalties it sought to recover in its initial disclosures. (ECF No. 169-11.) In response to an interrogatory, JL states that it may seek a royalty similar to one Jim Beam sought in an unrelated case but did not have any calculation of what that figure would be. (ECF No. 169-10 at 4-5.) Finally, during Diab's second deposition, he testified that he did not have "any expert or independent report showing [or] suggesting a reasonable royalty" and could only speculate what a reasonable rate might be. (ECF No. 170-1 at 5-8.)

## III.  LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving

party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Actual Damages

Fed. R. Civ. P. 26(a)(1) requires that a party include in its mandatory initial disclosures "a computation of each category of damages claimed," and that it also disclose the specific documents and materials "on which [that] computation is based." Fed. R. Civ. P. 37(c)(1) provides that a party that does not disclose the information required by Rule 26(a) (or which fails to supplement as required by Rule 26(e)) "is not allowed to use that information or witness to supply evidence on a motion ... unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Furthermore, Fed. R. Civ. P. 56(a) and (g) make clear that a court can grant summary judgment on "an item of

damages or other relief."

JL has not addressed Jim Beam's argument about its failure to disclose its computation of damages during discovery. It has not argued that its failure to disclose was justified or harmless. The only argument it presents in response is that actual damages are supported by the fact that Enkamp was unable to secure a listing for Jonny Love vodka in North Carolina. (ECF No. 176 at 21-23.)

As an initial matter, it is not clear that the evidence upon which JL relies supports its conclusion. JL cites a February 15, 2011 email from a North Carolina Beverage Control Commission administrator to Robinson and argues "as a result [of the comparison between the two products], Johnny Love Vodka was not given an official listing in North Carolina, and cannot be sold in retail stores in that state." (ECF No. 176 at 16.) The full email from the North Carolina official to Enkamp reads:

> [Enkamp], see attached. This is Jim Beam's new line of vodka. Looks a lot like Johnny Love. We did not list it so this is FYI only. We do not plan to list Johnny Love either. IT will have to remain a special order. Mecklenburg ABC can keep some on hand for their mixed beverage accounts to order but cannot put it on their retail shelves. No need to come to Raleigh. Thank you.

(ECF No. 36-2 at 7.) Even viewing this email in the light most favorable to JL, it does not say that the Johnny Love Vodka was not given an official listing because of its visual similarity to PUCKER Vodka. Nor does it state facts from which one might reasonably draw that conclusion. In any event, even if the email could support JL's argument, JL still has not produced a computation of damages arising from this claim.

Therefore, the Court finds there are two connected grounds for granting Jim Beam's Motion as it relates to actual damages. First, the Court agrees with Jim Beam that JL's failure to provide a computation of actual damages during discovery is neither justified nor harmless. JL's failure prevented Jim Beam from preparing a responsive case. Therefore, exclusion of JL's actual damages claim is appropriate under Fed. R. Civ. P. 26(a) and 37(c). Second, JL has failed to produce specific evidence upon which a reasonable factfinder could conclude that it had suffered actual damages and could quantify those damages. Therefore, Jim Beam is also entitled to summary judgment on actual damages

under the Rule 56(a) standard. Jim Beam's Motion is granted with respect to actual damages.

### B.     Reasonable Royalty

Jim Beam argues that JL may not recover a royalty because 1) it is not appropriate in situations, like this one, where the parties did not have a previous royalty agreement and, 2) as with actual damages, JL never identified a means of calculating a reasonable royalty or produced evidence upon which a fact finder could determine such a royalty. (ECF No. 170 at 17-20.) JL does not address either argument.

For the reasons discussed above, the Court agrees that JL may not seek royalties it failed to identify during discovery. Therefore, Jim Beam's Motion is granted with respect to any damages in in the form of royalties.

### C.     Disgorgement of Jim Beam's Profits

Finally, JL seeks equitable disgorgement of Jim Beam's profits pursuant to 15 U.S.C. § 1117(a), which allows a plaintiff to recover a defendant's profits for "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title." Jim Beam argues that in order to win this relief JL must show that Jim Beam willfully infringed upon JL's trademark. Jim Beam further argues that based on the record, no reasonable fact finder could conclude that it willfully adopted the PUCKER vodka design to trade on JL's goodwill. (ECF No. 170 at 20-25.) JL argues that Jim Beam is incorrect on the law and the evidence. According to JL, it does not need to show that Jim Beam acted willfully, and even if it did, it has produced evidence upon which a fact finder could make such a conclusion. (ECF No. 176 at 18-21.)

The parties' disagreement over the appropriate standard for disgorgement highlights a circuit split on the interpretation of Congress's 1999 amendments to the Lanham Act. In 1999 Congress added "or a willful violation under section 1125(c) of this title" to the language described above. Because this third criteria included the "willful" requirement, but the first two criteria remained unchanged, circuits have split over whether

Congress intended to alter the requirements for all three elements or just the last. In other words, by *only* placing willful before "a violation under section 1125(c) of this title", did Congress mean to say that in order to disgorge profits for "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title" a plaintiff is explicitly not required to show willfulness?[2]

Several months after the parties filed their briefs, the Ninth Circuit ruled squarely on this issue, clearing up any ambiguity in its earlier decisions. In *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 862 F.3d 1131, 1144-47 (9th Cir. 2017), the court recounted the history of the amendments and the competing interpretations of them, and concluded "the 1999 amendment has not changed the state of the law on disgorgement and that willfulness is still required." Therefore, Jim Beam is correct that in order to show it is entitled to Jim Beam's profits JL must show that Jim Beam willfully infringed its trademark.

JL argues that even if willfulness is the standard, a reasonable jury could conclude that Jim Beam acted willfully based on 1) its knowledge of JL's mark, including the lip design; 2) a Jim Beam employee's contact with JL during the design's development; 3) the large amount of money and effort Jim Beam expended on marketing in spite of its knowledge of JL's mark and a cease and desist letter; and 4) the USPTO's refusal of Jim Beam's trademark application. (ECF No. 176 at 20-21.) Jim Beam largely responds that the same facts JL identifies cut the other way – the amount of resources Jim Beam spent developing and promoting the product show that it was not simply trying to take advantage of any goodwill toward Johnny Love vodka. (ECF No. 170 at 23.) Jim Beam further argues that the Court's previous rulings in this case support the conclusion that it was not unreasonable to believe that its use of the mark was not an infringement. (ECF No. 178 at 20.)

Viewing the evidence that JL has identified and drawing all inferences in the light most favorable to JL, a reasonable factfinder may conclude that Jim Beam willfully

---

[2] For a more detailed discussion of the amendments and their impact, see *Romag Fasteners, Inc. v. Fossil, Inc.*, 817 F.3d 782, 785 (Fed. Cir. 2016), cert. granted, judgment vacated on other grounds, 137 S. Ct. 1373 (2017).

infringed upon JL's mark. *See Kaiser Cement Corp.,* 793 F.2d at 1103. JL has shown that Jim Beam was aware of its trademarks from multiple sources, including one source who contacted JL to ask about their sales. While knowledge about JL's trademark is not a per se case of bad intent, it may still act as an evidentiary foothold for a juror to reach such a conclusion. The Court's conclusion also takes into account that states of mind like willfulness are more often than not ill suited for summary judgment. *See, e.g., UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*, 446 F. Supp. 2d 1164, 1174 (E.D. Cal. 2006) ("Generally, a determination as to willfulness requires an assessment of a party's state of mind, a factual issue that is not usually susceptible to summary judgment."). Therefore, the Court finds that Jim Beam has failed to show an absence of disputed material fact on the issue of disgorgement, and its Motion is denied with respect to that claim for damages.

**V.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Jim Beam's Motion.

It is therefore ordered that Jim Beam's Renewed Motion for Summary Judgment as to the Unavailability of Damages (ECF No.170) is granted in part and denied in part. The Motion is granted with respect to JL's damages claims based on royalties and actual damages. It is denied with respect to JL's damages claims based on disgorgement of Jim Beam's profits.

DATED THIS 24th day of August 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE