UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| JL BEVERAGE COMPANY, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BEAM, INC., a Delaware corporation, *et al.*,<br><br>Defendants. | Case No. 2:11-cv-00417-MMD-CWH<br><br>ORDER |
|---|---|

**I.     SUMMARY**

Before the Court is Defendants Beam Inc. and Jim Beam Brands Co.'s (collectively, "Jim Beam") motion in limine #1 ("Motion") (ECF Nos. 208 (sealed version), 209 (redacted version)). The Court has reviewed Plaintiff JL Beverage Company, LLC's ("JL") response (ECF No. 220) and Jim Beam's reply (ECF Nos. 227 (redacted version), 228 (sealed version)). For the reasons discussed below, the Court denies Jim Beam's Motion.

**II.    BACKGROUND**

The facts giving rise to this action are set out in detail in the Court's previous orders and in the Ninth Circuit's opinion reversing an earlier order granting summary judgment on different grounds. (ECF Nos. 98, 107, 147.)

In brief, JL manufactures and sells vodka (JOHNNY LOVE vodka) whose bottles feature stylized depictions of lips that JL has trademarked. Jim Beam also sells vodka (PUCKER vodka) whose bottles feature stylized depictions of lips. JL alleges that Jim Beam's use of the lips constitutes trademark infringement and false designation of origin

1 | under the Lanham Act as well as common law trademark infringement and unfair
2 | competition. (*See* ECF No. 30 at 9-11; *see also* ECF No. 160 at 1-2 (clarifying what claims
3 | were revived by the Ninth Circuit's decision); ECF No. 162 at 3 (same).) The Court has
4 | previously held that JL may not seek actual damages or royalties on any of its claims.
5 | (ECF No. 185 at 10.)

**III.    LEGAL STANDARD**

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). It is a preliminary motion that is entirely within the discretion of the Court. *See Luce v. United States*, 469 U.S. 38, 41-42 (1984). In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

**IV.    DISCUSSION**

JL apparently will seek disgorgement of profits at trial based on Jim Beam's total nationwide sales of PUCKER vodka. (*See* ECF No. 220 at 2.) Jim Beam seeks to exclude evidence of the sales altogether, arguing that JL has failed to distinguish between those sales that resulted from infringing activity and those that did not. (*Id.*; ECF No. 209 at 4.) The Court will deny Jim Beam's Motion because granting the motion would amount to dismissal of JL's claim for damages, though the denial will be without prejudice given the serious concerns Jim Beam has raised regarding JL's evidentiary basis for seeking profits based on Jim Beam's nationwide sales of PUCKER vodka.

"Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), governs the award of monetary remedies in trademark infringement cases and provides for . . . . an award, subject to equitable principles, of 'any damages sustained by the plaintiff.'" *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). "A plaintiff

must prove both the fact and the amount of damage." *Id.* at 1407. "Because proof of actual damage is often difficult, a court may award damages based on defendant's profits on the theory of unjust enrichment." *Id.* "[A]n accounting [and disgorgement of the defendant's profits] is intended to award profits only on sales that are attributable to the infringing conduct." *Id.* at 1408. Thus, a plaintiff seeking disgorgement of profits under the Lanham Act bear the initial burden of establishing defendant's gross profits attributable to infringing activity with reasonable certainty. *Id.* Defendant then bears "the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." *Id.* Gross profits cannot be attributed to infringing activity when registrants have used the marks in distinct and geographically separate markets from the unauthorized users because no public confusion is possible. *Kerzner Int'l Ltd. v. Monarch Casino & Resort, Inc.*, 675 F. Supp. 2d 1029, 1047 (D. Nev. 2009) (quoting *Dawn Donut Co., Inc. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir.1959)); *see also Russell Rd. Food & Beverage, LLC v. Spencer*, No. 2:12-CV-01514-LRH, 2013 WL 321666, at *2 (D. Nev. Jan. 28, 2013).

Jim Beam relies primarily on *Lindy Pen*, 982 F.2d 1400, to argue that JL should not be permitted to introduce evidence of Jim Beam's profits from total nationwide sales of PUCKER vodka. (ECF No. 209 at 4.) In *Lindy Pen*, the plaintiff sued the defendant for trademark infringement, and the Ninth Circuit ultimately found that the plaintiff had established a likelihood of confusion in one particular market—the telephone order market. 982 F.2d at 1403-04. Nevertheless, the plaintiff sought disgorgement of profits based on the defendant's total sales of goods—not just telephone order sales—following remand. *Id.* at 1407-08. The district court found that an award of damages based on total sales was inappropriate because the total sales included sales outside the telephone order market, where confusion was not likely to occur. *See id.* at 1408. The Ninth Circuit affirmed the district court, finding that the plaintiff failed to carry its initial burden of establishing the defendant's gross profits attributable to the infringing conduct. *Id.*

///

Here, Jim Beam argues, JL seeks disgorgement of profits based on Jim Beam's total nationwide sales of PUCKER vodka even though Jim Beam's total nationwide sales include sales in geographic locations where JL did not sell any product. (ECF No. 209 at 3.) Jim Beam further argues that while JL theoretically might be able to demonstrate that the infringing market comprises the entire United States, JL cannot do so here because JL has failed to disclose sufficient evidence under Rule 26(a) to support such a showing. (ECF No. 227 at 5.)

JL argues in response that it need not identify any particular market because federally registered trademarks afford nationwide protection. (ECF No. 220 at 2.) While trademark registration affords nationwide protection against infringement, infringement exists only where infringing products are sold in the same market as authorized products. *See Kerzner*, 675 F. Supp. 2d at 1047 (quoting *Dawn Donut Co., Inc. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir. 1959)) ("[I]f the use of the marks by the registrant and the unauthorized user are confined to two sufficiently distinct and geographically separate markets, with no likelihood that the registrant will expand his use into the defendant's market, so that no public confusion is possible, then the registrant is not entitled to enjoin the junior user's use of the mark."); *Russell*, 2013 WL 321666, at *2. Courts have referred to markets in which both infringing and authorized products are sold as "infringing markets." *See, e.g.*, *Lindy Pen*, 982 F.2d at 1408. While JL theoretically might demonstrate that the infringing market here comprises the entire United States, JL still bears the initial burden of identifying an infringing market from which Jim Beam's profits derived. *See id.* Accordingly, JL's first argument—that it need not identify an infringing market—is unavailing.

JL does in fact argue that the infringing market comprises the entirety of the United States. JL alleges that it advertised, marketed, and promoted goods bearing its trademarks throughout the United States and that it has distributors in at least twenty states. (ECF No. 220 at 2-3.) Jim Beam counters that JL has no evidence showing national sales, however. (ECF No. 227 at 7-8.) For example, Jim Beam cites deposition testimony by JL's principal,

Mr. Diab, that JL never sold any of its product in Florida. (*Id.* at 10.) However, Jim Beam's argument goes to the weight rather than the admissibility of JL's evidence.

JL further argues that there is no need to show perfect geographical overlap between the markets in which its product was sold and the markets in which Jim Beam's PUCKER vodka was sold. (ECF No. 220 at 3.) Regardless of the degree of geographical overlap, however, JL must at least carry its initial burden of showing that Jim Beam's gross profits derived from an infringing market. *Lindy Pen*, 982 F.2d at 1408. While Jim Beam has persuasively argued that it is unlikely JL will be able to bear its burden at trial, such argument goes to the merits of the case rather than the admissibility of JL's proposed evidence.

JL further argues that Jim Beam seeks to improperly shift the burden of production to JL. (ECF No. 220 at 4.) JL insists that once it has proven infringement, the burden shifts to Jim Beam to show that its profits were not attributable to the infringing mark. (*Id.*) JL misstates its burden, however. The plaintiff in *Lindy Pen* made the same argument as JL, and the Ninth Circuit rejected it, finding that "[t]he plaintiff has . . . the burden of establishing the defendant's gross profits from the infringing activity . . . ." *Lindy Pen*, 982 F.2d at 1408. Only when the plaintiff has isolated the gross profits attributable to the infringing conduct does the burden shift to the defendant to demonstrate that those profits resulted from something other than infringement, such as the defendant's reputation. *Id.*; *see also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942) (describing sources of profits other than infringement). Accordingly, JL's argument regarding the burden of production is unpersuasive.

JL further argues that excluding all evidence of Jim Beam's profits under Fed. R. Civ. P. 37(c)(1) is too harsh a sanction because it amounts to dismissal of a claim. (ECF No. 220 at 4.) The Court agrees that excluding evidence of Jim Beam's profits altogether would amount to dismissal of JL's claim for damages in light of the Court's prior orders restricting JL's remedies. When a discovery sanction amounts to dismissal of a claim, a district court is required to consider whether the claimed noncompliance involved

willfulness, fault, or bad faith as well as the availability of lesser sanctions. *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012). Jim Beam has made no showing of willfulness, fault, or bad faith. Accordingly, the Court will deny Jim Beam's Motion. However, given the serious concerns Jim Beam has raised regarding JL's evidentiary basis for seeking damages based on Jim Beam's total nationwide sales of PUCKER vodka, the denial will be without prejudice.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Jim Beam's motion in limine #1 (ECF Nos, 208, 209) is denied without prejudice.

DATED THIS 18th day of April 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE